IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDREW MEHDIZADEH,** <br>              **Plaintiff,** <br><br>     **v.** <br><br> **STARBUCKS CORPORATION,** <br> **APOTHECARY SERVICES, INC., THE** <br> **NEW YORK TIMES COMPANY, THE** <br> **AMERICAN PROSPECT,** <br>              **Defendants.** | **CIVIL ACTION** <br><br><br><br> **NO. 24-3339** |

**MEMORANDUM OPINION**

Defendants The New York Times Company and The American Prospect (together, the

"Media Defendants") move to dismiss Andrew Mehdizadeh's Fourth Amended Complaint as

pleaded against them. Fed. R. Civ. P. 12(b)(6). For the reasons that follow, their Motion will be

granted.

### I.      BACKGROUND

The following factual recitation is taken from Mehdizadeh's operative Complaint, well-

pleaded allegations from which are taken as true at this stage. *Fowler v. UPMC Shadyside*, 578

F.3d 203, 210-11 (3d Cir. 2009).

In recent years, Mehdizadeh has been employed at Target, Rosemont Pharmacy, and

Starbucks. He alleges that authors at the New York Times and The American Prospect wrote

articles detailing the efforts to unionize Starbucks locations by Starbucks Workers United

("SWU") in fact were "coordinated actions . . . aimed to tarnish [his] reputation" and "a

concerted effort to undermine and intimidate" him. At the heart of Mehdizadeh's allegations is

his steadfast belief that SWU is a "company union"—as he defines it, "a labor organization that

is controlled by an employer rather than independently by the workers," which could violate the

National Labor Relations Act, which declares it "an unfair labor practice for an employer . . . to

dominate or interfere with the formation or administration of any labor organization or contribute

financial or other support to it."  29 U.S.C. § 158(a)(2).  Mehdizadeh has filed multiple charges

against Starbucks with the National Labor Relations Board ("NLRB") to press this viewpoint.

He also contacted reporters employed by the Media Defendants about this concern.

The Media Defendants' articles covering SWU's campaign, however, did not reflect this

view.  Instead, they "reinforced the narrative that Starbucks was engaging in good faith

negotiations with an independent union.  This directly contradicted [Mehdizadeh's] allegations

of the union being a company-controlled entity."  He considers the "timing" of the publication of

some of these articles suspicious, coming at the same time as or soon after, for example,

Starbucks's announcement that it planned to resume contract negotiations with SWU, social

media posts by Mehdizadeh criticizing the NLRB, his unemployment compensation hearing, and

the filing of his lawsuit against Starbucks.  This timing "supports the claim of a coordinated

effort to discredit and intimidate him."

Mehdizadeh sued Starbucks, Rosemont, and the Media Defendants, alleging that their

conduct constituted intentional infliction of emotional distress ("IIED"), a civil conspiracy, and

defamation in state court.  Starbucks removed the case to federal court.  28 U.S.C. § 1441(a).

The Media Defendants now move to dismiss Mehdizadeh's operative Complaint.  Fed. R. Civ. P.

12(b)(6).

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler*, 578 F.3d at 210 (3d Cir. 2009).

Where, as here, one amended pleading already has been filed, further amendment may be allowed "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). That means that "leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); *accord Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

### III.    DISCUSSION

#### A.  Intentional Infliction of Emotional Distress

To state a claim for IIED, a complaint must plausibly allege: (1) extreme and outrageous conduct by the defendant; (2) which is intentional or reckless; and, (3) causes severe emotional distress. *Gilbert v. Feld*, 799 F. Supp. 854, 862 (E.D. Pa. 1992).

The Fourth Amended Complaint does not plausibly allege that either of the Media Defendants engaged in "extreme and outrageous conduct," so this count will be dismissed. To give rise to liability, their conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (quotation omitted). "[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Johnson v. Caparelli*, 625 A.2d 668, 671 (Pa. Super. 1993) (citations omitted); *see also Betz v. Satteson*, 259 F. Supp.3d 132, 195 & n.341 (M.D. Pa. 2017). Examples of "extreme and outrageous

3

conduct" include confining and sedating a non-verbal patient for eight days while he had several

seizures, *Schutt v. Melmark, Inc.*, 186 F. Supp.3d 366, 371-72 (E.D. Pa. 2016), and intentionally

preparing false medical records blaming the plaintiff for someone's death, leading to his

indictment for homicide, *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236, 1238-39 (Pa. Super.

1981).  *See generally Salerno v. Phila. Newspapers, Inc.*, 546 A.2d 1168, 1172 (Pa. Super. 1988)

(collecting cases).

Mehdizadeh's allegations, in contrast, involve the ordinary journalistic process playing

out at the New York Times and the American Prospect.  The Fourth Amended Complaint

describes journalists at both organizations reported on SWU's unionization efforts without ever

mentioning Mehdizadeh by name or saying anything incorrect about him.  In a previous case,

publication of a news article that mentioned a plaintiff by name and falsely said that he "was

involved in a sex scandal" was held to have fallen short of "extreme and outrageous" conduct.

*Cheney v. Daily News L.P.*, 654 F. App'x 578, 583-84 (3d Cir. 2016) (not precedential).  In view

of this persuasive caselaw and the extreme conduct that historically has given rise to IIED

liability, it is difficult to see how reporting that does not mention Mehdizadeh at all could

transcend "all possible bounds of decency."  *Hoy*, 720 A.2d at 754 (quotation omitted).  Leave to

amend therefore would be futile, and his IIED claim will be dismissed with prejudice as against

the Media Defendants.

### B.  Defamation

> In Pennsylvania, the plaintiff in a defamation action bears the burden of proving:
> (1) the defamatory character of the communication; (2) its publication by the
> defendant; (3) its application to the plaintiff; (4) the understanding by the
> recipient of its defamatory meaning; (5) the understanding by the recipient of it as
> intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff
> from its publication; and[,] (7) abuse of a conditionally privileged occasion.

*Pace v. Baker-White*, 432 F. Supp.3d 495, 508 (E.D. Pa. 2020) (citing 42 Pa. C.S. § 8343(a)).

The Media Defendants argue that Mehdizadeh's defamation claim fails because the articles he references cannot plausibly be understood to be referring to him at all.  They are correct. "Defamatory words, in order to be actionable, must refer to some ascertained or ascertainable person, and that person must be the plaintiff."  *Schoneck v. WJAC, Inc.*, 258 A.2d 504, 507 (Pa. 1969) (quotation omitted); *see also Chaney*, 654 F. App'x at 581.  The allegedly defamatory statement must at least "point to" the plaintiff "by description or circumstances tending to identify him."  *Schoneck*, 258 A.2d at 507 (quotation omitted).  It is for the court to "initially decide whether the defamatory material was capable of being reasonably understood as intended to refer to the complainant."  *Harris v. Easton Publ'g Co.*, 483 A.2d 1377, 1385 (Pa. Super. 1984).

Here, Mehdizadeh has failed plausibly allege that any of the articles identified refer to him even in this indirect fashion.  Because further amendment would "cure th[is] deficiency," *Shane*, 213 F.3d at 115, his defamation claim therefore will be dismissed with prejudice as against the Media Defendants.

### C.  Civil Conspiracy

Under Pennsylvania law, a civil conspiracy requires proof by a preponderance of the evidence of: (1) an agreement or combination by two or more people; (2) "with intent to do an unlawful act or . . . otherwise lawful act by unlawful means;" (3) "malice, *i.e.*, an intent to injure;" (4) an overt act in furtherance of the conspirators' "common purpose or design;" and (5) "actual legal damages."  *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 212 (Pa. Super. 2003) (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979)); *accord Cohen v. Pelagatti*, 528 A.2d 657, 658 (Pa. Super. 1987).  Among other things, the Media Defendants argue that Mehdizadeh's operative Complaint "fails to plead the existence of any conspiratorial agreement."  They are correct.

"Agreement is the *sine qua non* of a conspiracy."  *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997).  Thus, "parallel conduct . . . alone is insufficient to establish a civil conspiracy."  *Petula v. Mellody*, 588 A.2d 103, 107 (Pa. Commw. 1991).  "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy."  *Thompson Coal Co.*, 412 A.2d at 473 (quotation omitted).

Here, while the Fourth Amended Complaint is replete with allegations that show that the Media Defendants' articles happened to coincide with certain newsworthy events such as Starbucks's decision to reopen negotiations with SWU, it is not reasonable to infer, as Mehdizadeh urges the Court to, an unlawful conspiracy from these articles' timing alone. Accordingly, Plaintiff's civil conspiracy claim will be dismissed with prejudice as against the Media Defendants.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**WENDY BEETLESTONE, J.**