IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW MEHDIZADEH,<br>　　　　　Plaintiff, | CIVIL ACTION |
| v. | |
| STARBUCKS CORPORATION,<br>　　　　　Defendant. | NO.  24-3339 |

### MEMORANDUM OPINION

　　　　Plaintiff Andrew Mehdizadeh and Defendant Starbucks Corporation ("Starbucks") each move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  For the reasons that follow, Starbucks's Motion will be granted and Mehdizadeh's Motion will be denied.

　　I.　　BACKGROUND

　A.　Factual Background

　　　　The following factual recitation is taken from Mehdizadeh's Fourth Amended Complaint, well-pleaded allegations from which are taken as true at this stage.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

　　　　In recent years, Mehdizadeh has been employed at Target, Rosemont Pharmacy, and Starbucks.  At the heart of Mehdizadeh's allegations is his belief that Starbucks Workers United ("SWU") is a "company union"—as he defines it, "a labor organization that is controlled by an employer rather than independently by the workers," which could violate the National Labor Relations Act.  *See* 29 U.S.C. § 158(a)(2) ("It shall be an unfair labor practice for an employer . . . to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it.").  Mehdizadeh has filed multiple charges against Starbucks with the National Labor Relations Board ("NLRB") to press this

viewpoint.

In November 2023, a Starbucks shift supervisor suggested that Mehdizadeh avoid discussing pay issues at the store at which they were both then-employed "due to its sensitivity." Two SWU organizers similarly advised Mehdizadeh to refrain from having conversations about union-related topics. Days later, a different shift supervisor asked Mehdizadeh, in front of his coworkers, whether he wanted to unionize the store. After he answered in the affirmative, she accused him of, among other things, lying when he told her that he was told to not discuss pay issues by the other shift supervisor. Following this exchange, Mehdizadeh filed an NLRB charge against Starbucks, accusing it of establishing a "company union."

A few weeks later, Mehdizadeh informed his coworkers through a group text message thread that he intended to go on "strik[e] against Starbucks unfair labor practices." In response, the Starbucks shift supervisor who accused him of lying, who was added to the thread by one of Mehdizadeh's coworkers, replied to Mehdizadeh's message and "allegedly defamed [him] . . . mocking [him] for his age, stating that 'nobody depends on you, nobody needs you, nobody respects you,' and accusing [him] of harassing and disrespecting everyone who works with him and never listening to any of the women at work." Mehdizadeh views the shift supervisor's comments as "derogatory and aimed to demean [his] character and work ethic." Although Mehdizadeh reported the comments to the store manager, Starbucks did not take "any measures to publicly refute or distance themselves" from the shift supervisor's comments. Mehdizadeh was "profoundly affected by [the shift supervisor's] remarks" and experienced significant "deep humiliation and distress." Because he was "unable to face returning to an environment where such accusations went unchecked" by Starbucks management, he resigned his position four days after receiving the text message and applied for unemployment benefits shortly thereafter.

2

Around this same time, Mehdizadeh contacted reporters employed by the New York Times and The American Prospect (collectively, the "Media Defendants") about his concerns regarding Starbucks and SWU.  The Media Defendants' articles covering SWU's campaign, however, "directly contradicted [Mehdizadeh's] allegations of the union being a company-controlled entity."  Instead, the articles "reinforced the narrative that Starbucks was engaging in good faith negotiations with an independent union."  He further considers the "timing" of some of these articles suspicious, as they were published at the same time as, or shortly after, for example:  Mehdizadeh's text messages with colleagues and SWU organizers about his NLRB charges; Starbucks's announcement that it planned to resume contract negotiations with SWU; social media posts by Mehdizadeh criticizing the NLRB; his unemployment compensation hearing; and, the filing of this lawsuit against Starbucks.  Taken together, he alleges that Starbucks and the Media Defendants engaged in "concerted actions" by coordinating, writing, and "strategically tim[ing]" the publication of announcements and articles about SWU's organizing efforts—actions that he submits were designed to "tarnish his reputation," undermine his credibility, and intimidate him.

B. **Procedural Background**

Mehdizadeh sued Starbucks and the Media Defendants in state court, alleging that their conduct constituted intentional infliction of emotional distress ("IIED"), a civil conspiracy, and defamation.  After Starbucks removed this case to federal court, *see* 28 U.S.C. § 1441(a), the Media Defendants subsequently filed a motion to dismiss Mehdizadeh's Fourth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), which was granted.  *See Mehdizadeh v. Starbucks Corp.*, 2024 WL 3927217, at *1-3 (E.D. Pa. Aug. 23, 2024).

II. **LEGAL STANDARD**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but

early enough not to delay trial." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when "the movant clearly establishes that no material issue of fact remains . . . and that he is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)). When deciding a motion for judgment on the pleadings, the Court considers the pleadings and exhibits attached thereto, matters of public record and "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents." *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp.2d 591, 595 (E.D. Pa. 2010).[1]

---

[1] In the course of this matter, the Court has considered dozens of requests submitted by Mehdizadeh. For instance, Mehdizadeh filed three Motions for Leave to Amend the Complaint, two of which the Court granted. In the month following the Court's Memorandum Opinion granting the Media Defendants' Motion to Dismiss the Fourth Amended Complaint, Mehdizadeh filed: sixteen letters and amended letters (*see* ECF Nos. 81, 82, 108, 109, 110, 111, 112, 121, 124, 139, 144, 145, 146, 147, 148, 149); six Motions and Amended Motions for Summary Judgment (*see* ECF Nos. 87, 88, 89, 90, 93, 97); five Motions and Amended Motions to Disqualify the Judge (*see* ECF Nos. 83, 84, 85, 86, 128); four Motions and Amended Motions for Judgment on the Pleadings (*see* ECF Nos. 100, 123, 135, 137); three Motions and Amended Motions for Reconsideration (*see* ECF Nos. 122, 129, 141); and, various other filings, including withdrawals and Notices of Correction pertaining to the above-mentioned filings. In an Omnibus Order addressing these filings (*see* ECF No. 150), Mehdizadeh was warned that if he "continues to submit duplicative and/or subsequently withdrawn filings at the pace he has established over the past month, the Court will consider enjoining him from submitting any additional filings without leave of Court" pursuant to the All Writs Act. *See* 28 U.S.C. 1651(a). *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993) (enabling district courts to issue such injunctions to "preclude abusive, groundless and vexatious litigation").

In the four days following that admonition, however, Mehdizadeh filed five additional filings, at least one of which was substantially duplicative of a previously-filed motion. Accordingly, Mehdizadeh was ordered to show cause why he should not be enjoined from filing further motions, pleadings, or other papers in this matter without the express written permission of this Court (*see* ECF No. 160). In response (*see* ECF No. 162), Plaintiff averred as follows:

> Regarding [ECF No. 160], all the Plaintiff can say, to show cause, is that the [J]udge is a proven liar and criminal who engages in witness intimidation. She threatened my family too, albeit indirectly. She has no authority to prohibit me from filing anything ever. For the reasons I have explained in CV-2024-008377, which I filed on September 27, 2024, she belongs in jail.

Ultimately, the Court prohibited Mehdizadeh from filing any further motions, pleadings, or other papers in this matter without its express written permission. He was further instructed to contact Chambers via email before filing any documents in this matter and to refrain from emailing any communications to this Court unless those communications properly involve a subject enumerated in Section I of the Judge's Policies and Procedures, *see* https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/beepol.pdf, or unless the communications are sent to seek permission to submit a filing in this matter.

In the last ten days alone, Mehdizadeh has emailed Chambers at least twenty-two times.

4

Further, the allegations "presented in the pleadings and the inferences to be drawn therefrom" must be accepted and construed "in the light most favorable to the nonmoving party." *Rosenau*, 539 F.3d at 221 (citation omitted).

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Zimmerman v. Corbett*, 873 F.3d 414, 417 (3d Cir. 2017) (quoting *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted).

### III.    DISCUSSION[2]

#### A.    Intentional Infliction of Emotional Distress

---

[2] At the outset, Mehdizadeh asserts that it would be "legally inconsistent" to grant Starbucks's Motion after previously denying without prejudice his Fifth Amended Motion for Summary Judgment for the f when a court "denies summary judgment, it implicitly acknowledges the existence of genuine issues of material fact that must be resolved at trial, regardless of any procedural concerns." Mehdizadeh has not provided any support for this argument as required by Rule 7.1 of the Local Rules of Civil Procedure of the Eastern District of Pennsylvania. *See* E.D. Pa. R. Civ. P. 7.1(c) ("Every motion not certified as uncontested, or not governed by Local Civil Rule 26.1(g), shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion."). "Courts in this District have consistently held the failure to cite any applicable law is sufficient to deny a motion as without merit because zeal and advocacy is never an appropriate substitute for case law and statutory authority in dealings with the Court." *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp.2d 506, 511

To state a claim for IIED under Pennsylvania law, a complaint must plausibly allege: (1) extreme and outrageous conduct by the defendant; (2) which is intentional or reckless; and, (3) causes severe emotional distress. *Gilbert v. Feld*, 788 F. Supp. 854, 862 (E.D. Pa. 1992) (citation omitted). Because, for the following reasons, the Fourth Amended Complaint does not plausibly allege that Starbucks engaged in "extreme and outrageous conduct," this count will be dismissed.

"[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir. 1988). To give rise to liability, Starbucks's conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (citations and quotations omitted). This is a very high bar that will only be met in the most egregious of situations. *See Rinehimer v. Luzerne Cnty. Cmty. Coll.*, 539 A.2d 1298, 1305 (Pa. Super. 1988). To that end, conduct that Pennsylvania courts have "deemed sufficiently outrageous to constitute IIED includes: (1) killing the plaintiff's son with an automobile and then burying the body, rather than reporting the incident to the police; (2) intentionally fabricating documents that led to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false medical records diagnosing the plaintiff with a fatal disease." *Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp.2d 739, 756 (M.D. Pa. 2009) (citing *Hoy*, 720 A.2d at 754). Liability does not, by contrast, "extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Kazatsky v. King David*

---

n.8 (E.D. Pa. 2007) (citations and quotations omitted); *see also Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion . . . will be deemed waived." (citation omitted)).

*Memorial Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987) (quoting Restatement (Second) of Torts § 46 cmt. D).  Taken together, these prerequisites have tightly circumscribed the instances of recovery for IIED.  *See Cox*, 861 F.2d at 395.

Here, Mehdizadeh first argues that Starbucks engaged in "extreme and outrageous" conduct when it "strategically" timed the publication of various company announcements regarding ongoing negotiations with SWU.  Given that none of these announcements ever mentioned Mehdizadeh by name or said anything about him more generally, it is difficult to see how Starbucks engaged in conduct that transcended "all possible bounds of decency," with respect to him.  *Hoy*, 720 A.2d at 754; *see also Salerno v. Philadelphia Newspapers, Inc.,* 92, 546 A.2d 1168, 1172 (Pa. Super. 1988) ("[T]he publication of a newspaper article which merely reports a shooting incident and possible motives thereof cannot support a cause of action for intentional infliction of emotional distress.").[3]

Mehdizadeh's allegations regarding two comments directed at him by two Starbucks shift supervisors—one in which a supervisor suggested that Mehdizadeh avoid discussing pay issues at the workplace "due to its sensitivity," and another in which a different supervisor made "allegedly defamatory" remarks in a group text message thread about Mehdizadeh's reputation amongst his coworkers—fare no better.  "[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress."  *Cox*, 861 F.2d at 395.  To that end, conduct that conceivably could "be characterized as bullying, abusive, improper, and

---

[3] Citing *Virginia v. Black*, 538 U.S. 343, 359-60 (2003), Mehdizadeh asserts that "even implicit, symbolic threats . . . can constitute threats when done with the intent to intimidate."  To bolster this point, he cites two additional cases, *United States v. Malik*, 16 F.3d 45, 49 (2d Cir. 1994), and *United States v. Turner*, 720 F.3d 411, 420 (2d Cir. 2013), both of which he argues make a similar point and lend support to his IIED claim.  However, none of these cases are instructive for present purposes, as they variously considered the protected status of speech under the First Amendment and the sufficiency of evidence to support criminal convictions rather than meeting an element of an IIED claim.

highly offensive" is frequently dismissed as not sufficiently "extreme or outrageous" to allow for recovery on an IIED claim. *Schaffhouser v. Transedge Truck Centers*, 2020 WL 2847935, at *6 (E.D. Pa. June 2, 2020); *see also Dart v. Cnty. of Lebanon*, 2014 WL 4792135, at *11 (M.D. Pa. Sept. 23, 2014) (finding that the defendant's "demeaning comments" regarding the plaintiff's work performance, including statements that "a blind person could do better than" the plaintiff could not be considered so "extreme and outrageous" to support an IIED claim); *Gonzalez v. CNA Ins. Co.*, 717 F. Supp. 1087, 1089-90 (E.D. Pa. 1989) (finding that an employee's allegation that his employer falsely accused him of sexually harassing fellow employees did not rise to the level of outrageousness necessary to state an IIED claim); *Scheffler v. Ultra Page, Inc.*, 2007 WL 1847407, at *1, *4 (E.D. Pa. June 25, 2007) (dismissing an IIED claim where a supervisor, among other things, told a female plaintiff to be "one of the boys," forced her to participate in a weight loss contest, informed a mortgage company that she was no longer employed even though she was simply out on maternity leave thereby causing her mortgage application to be denied, and constructively discharged her by eliminating her position and requiring her to accept a demotion); *Coney v. Pepsi Cola Bottling Co.*, 1997 WL 299434, at *1 (E.D. Pa. May 29, 1997) (dismissing an IIED claim and noting that "highly provocative racial slurs and other discriminatory incidents do not amount to actionable outrageous conduct"); *Sugarman v. RCA Corp.*, 639 F. Supp. 780, 788 (M.D. Pa. 1985) (finding an employee's claim that he was falsely charged with theft and subsequently humiliated in front of his fellow employees not sufficiently "extreme and outrageous" to permit recovery for IIED). In view of this persuasive caselaw and the type of acts that historically have given rise to IIED liability, the shift supervisors' comments do not rise to the level of "the most clearly desperate and ultra extreme conduct" required to support an IIED claim under Pennsylvania law. *Hoy*, 720 A.2d at 754.

In sum, none of Mehdizadeh's allegations state a plausible claim of IIED. Considering the clear import of Mehdizadeh's allegations, the high bar required to permit recovery, and the fact that Mehdizadeh has already amended his Complaint four times, further leave to amend would be futile. *See USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2006) (explaining that a District Court has the discretion to dismiss a complaint with prejudice where there have been "repeated failures to cure the deficiency by amendments previously allowed"); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied."). His IIED claim thus will be dismissed with prejudice.[4]

### B. Defamation

In Pennsylvania, the plaintiff in a defamation action bears the burden of proving:

> (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and[,] (7) abuse of a conditionally privileged occasion.

*Pace v. Baker-White*, 432 F. Supp.3d 495, 508 (E.D. Pa. 2020) (citing 42 Pa. C.S. § 8343(a)).

Mehdizadeh alleges that the following text message, which was sent to him and his coworkers by a Starbucks shift supervisor, is defamatory:

> people here have jobs and school and much better things to worry about than going back and forth with a 37 year old man who's acting like a high schooler. nobody depends on you, nobody needs you, nobody respects you. you're creating

---

[4] In the Fourth Amended Complaint, Mehdizadeh also describes several incidents and interactions involving SWU organizers that he deems equally "extreme and outrageous." For instance, he alleges that an SWU organizer told him that he "had put a target on his back" by filing an NLRB charge against Starbucks, and subsequently urged him to withdraw the charge. He also asserts that various SWU social media posts—which ran the gamut from discussions about "divisive social issues" to organizing updates with links to articles published by the New York Times regarding collective bargaining negotiations with Starbucks—were intimidating and caused him severe emotional distress. Critically, though, Mehdizadeh has not sued SWU in this matter. Although he contends that Starbucks is liable for SWU's actions "under principles of agency," or, alternatively, because SWU "is an extension of Starbucks" as a company union, he offers no citations to support these conclusory assertions as required by Local Rule 7.1. *See* E.D. Pa. R. Civ. P. 7.1(c).

> problems out of literally nothing. You keep acting like you're doing our job a favor when you literally do nothin but show up (whenever you decide you want to come in and half ass do your job) and harass and disrespect everyone who works with you. you created a group chat with people who you wouldn't even listen to at work because they're 'not managers' yet here you are trying to form a group with them. you keep preaching about discrimination yet you don't listen to any women at work despite [sic]

As a threshold matter, the Court must determine whether this text message is capable of a defamatory meaning. *See Tucker v. Fischbein*, 237 F.3d 275, 281 (3d Cir. 2001) (citing *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 215-16 (Pa. 1981)). "A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Maier v. Maretti*, 671 A.2d 701, 704 (Pa. Super. 1995); *see also* Restatement (Second) of Torts § 559. The determination of whether the communication is defamatory focuses on "the effect [the statement] is fairly calculated to produce" and "the impression it would naturally engender in the minds of the average persons among whom it is intended to circulate." *Baker v. Lafayette Coll.*, 532 A.2d 399, 402 (Pa. 1987). "[T]he statement must do more than merely embarrass or annoy the plaintiff; it must provoke 'the kind of harm which has grievously fractured [one's] standing in the community of respectable society.'" *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004)).

The offending statement must "be construed as a whole, and each word must be read in the context of all the other words." *Kurowski v. Burroughs*, 994 A.2d 611, 617 (Pa. Super. 2010) (citations omitted). This is because "words which standing alone may reasonably be understood as defamatory may be so explained or qualified by their context as to make such an interpretation unreasonable." *Tucker*, 848 A.2d at 124. When the implication alleged by the plaintiff is not "reasonably susceptible of a defamatory meaning," the plaintiff has failed to state a claim. *See*

10

*Beverly Enterprises, Inc. v. Trump*, 182 F.3d 183, 191 (3d Cir. 1999).

Importantly, "[o]nly statements of fact, not expressions of opinion, can support an action for defamation." *Moore v. Cobb-Nettleton*, 889 A.2d 1262, 1267 (Pa. Super. 2005); *see also Rockwell v. Allegheny Health, Educ. & Rsch. Found.*, 19 F. Supp.2d 401, 406 (E.D. Pa. 1998) ("A simple non-actionable expression of opinion occurs when a person expresses a comment as to another's conduct, qualifications or character after either stating the facts on which he bases his opinion or when both parties to the communication know the facts or assume their existence." (citations omitted)). Despite this general rule, an opinion that could reasonably be understood to imply undisclosed defamatory facts, known as a "mixed opinion," may support a cause of action based upon those unenumerated facts. *See Pace*, 432 F. Supp.3d at 512 (citing *Remick v. Manfredy*, 238 F.3d 248, 261 (3d Cir. 2001)). Whether a statement is a fact or an opinion is a question of law. *Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162, 168 (3d Cir. 2014) (citing *Thomas Rockwell Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 215 (1991)).

Construed as a whole, a review of the offending text message from the Starbucks shift supervisor reveals that the statements contained therein amount to "mere[] caustic insults" from an apparently frustrated colleague "to which reasonable people would pay little heed," *Purcell v. Ewing*, 560 F. Supp.2d 337, 344 (M.D. Pa. 2008), let alone view as "grievously fractur[ing]" Mehdizadeh's standing in the community.[5] *Graboff*, 744 F.3d at 136. Several of the shift supervisor's comments, such as those referring to Mehdizadeh as a "37 year old man who's

---

[5] In fact, Mehdizadeh notes in the Fourth Amended Complaint that he "work[ed] as a contractor for the Unemployment Compensation Office through Inspiritec" following his resignation from Starbucks, which undermines his argument that the text message caused significant harm to his reputation within the professional community. *See Emekekwue v. Offor*, 26 F. Supp.3d 348, 360 (M.D. Pa. 2014) (finding that the plaintiff did not meet his burden in establishing the defamatory character of an email because, *inter alia*, he "failed to set forth legally sufficient evidence showing that his reputation or standing in the community suffered in any way as a result of the email").

11

acting like a high schooler," and that "nobody depends on [him], nobody needs [him], nobody respects [him]" are non-actionable expressions of opinion. *See Rockwell,* 19 F. Supp.2d at 406. And although Mehdizadeh considers other portions of the message to be "derogatory and aimed to demean [his] character and work ethic"—namely, the shift supervisor's accusations that he harassed and disrespected his colleagues—it is well-settled that "derogatory characterizations without more are not defamatory." *McCafferty v. Newsweek Media Grp., Ltd*., 955 F.3d 352, 358 (3d Cir. 2020) (examining Pennsylvania law and noting that, standing alone, accusations of racism and bigotry are not defamatory); *Beverly Enterprises*, 182 F.3d at 188 (finding that two accusations directed at an employer by union officials—"you people at [the company] are all criminals" and "[the company supervisor] devot[ed] [his] entire career to busting unions"—amounted to a "vigorous and hyperbolic rebuke" and a "vituperative outburst" respectively as opposed to specific allegations of misconduct).

Because further amendment "would not cure the deficiency," *Shane v. Fauver*, 213 F.3d 113, 115-16 (3d Cir. 2000), his defamation claim against Starbucks therefore will be dismissed with prejudice.[6]

### C. Civil Conspiracy

---

[6] In Mehdizadeh's Response in Opposition to Starbucks's Motion, he argues, for the first time, that the statements in the text messages should also be considered defamation *per se* pursuant to Restatement (Second) of Torts § 573. However, Mehdizadeh did not bring this claim in his Fourth Amended Complaint, and "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc*., 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).

Even so, the statements at issue do not rise to the level of defamation *per se*. Under Pennsylvania law, "[d]efamation *per se* can be either words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct." *Synygy, Inc. v. Scott–Levin, Inc*., 51 F. Supp.2d 570, 580 (E.D. Pa. 1999), *aff'd*, 229 F.3d 1139 (3d Cir. 2000). Generously construed, Mehdizadeh argues that the shift supervisor's accusations imputed business misconduct because they harmed his professional reputation. But business misconduct in this context generally refers to "conduct that is illegal or connotes illegal activity." *Jungclaus v. Waverly Heights, Ltd*., 2018 WL 1705961, at *4 (E.D. Pa. Apr. 9, 2018) (citing Restatement (Second) of Torts § 573). Because nothing in the shift supervisor's comments can be read as such, his defamation *per se* argument would fail. *See Synygy*, 51 F. Supp.2d at 580 (defamation *per se* requires a statement that is "more than mere general disparagement" or "an expression of a negative opinion").

Under Pennsylvania law, a civil conspiracy requires proof by a preponderance of the evidence of: (1) an agreement or combination by two or more people; (2) "with intent to do an unlawful act or . . . otherwise lawful act by unlawful means;" (3) "malice, *i.e.*, an intent to injure;" (4) an overt act in furtherance of the conspirators' "common purpose or design;" and, (5) "actual legal damages." *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 212 (Pa. Super. 2003) (citing *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. 1979)). Because "[a]greement is the *sine qua non* of a conspiracy," *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997), "parallel conduct . . . alone is insufficient to establish a civil conspiracy," *Petula v. Mellody*, 588 A.2d 103, 107 (Pa. Commw. 1991). "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." *Thompson Coal Co.*, 412 A.2d at 473 (quotations omitted).

Relying primarily on the Fourth Circuit's opinion in *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412 (4th Cir. 2015), Mehdizadeh points to patterns of "parallel behavior" between Starbucks and the Media Defendants that he claims cannot "plausibly be attributed to independent decision-making, thereby creating a reasonable inference of an agreement—an essential element of a civil conspiracy claim." However, applying the law of the case doctrine, which "limits relitigation of an issue once it has been decided in an earlier stage of the same litigation" so as to "promote finality, consistency, and judicial economy," *Hamilton v. Leavy*, 322 F.3d 776, 786-87 (3d Cir. 2003) (citations and quotations omitted), this same argument has already been decided against Mehdizadeh. *See Mehdizadeh*, 2024 WL 3927217, at *3.

Even if that was not dispositive here, a plaintiff alleging parallel conduct must "plead[] the requisite 'more' that 'point[s] toward a meeting of the minds." *SD3*, 801 F.3d at 429 (citing *Twombly*, 550 U.S. at 557). In *SD3*, the plaintiff adequately pleaded such allegations where it

13

not only detailed the "who, what, when, and where" of the parallel conduct, but also described "a number of communications among the defendants" to further substantiate its claims. *Id.* at 432. While Mehdizadeh's Fourth Amended Complaint is replete with allegations that the publication of the Media Defendants' articles happened to coincide with certain newsworthy events, such as Starbucks's decision to reopen negotiations with SWU, it is not reasonable to infer without more, as Mehdizadeh urges the Court to, an unlawful conspiracy from the timing of these articles.[7]

Accordingly, Mehdizadeh's civil conspiracy claim against Starbucks will be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Starbucks' Motion is granted and Mehdizadeh's Motion is denied.[8]

An appropriate order follows.

---

[7] Mehdizadeh contends that Starbucks tacitly admitted to participating in the alleged conspiracy by stating in its Answer that it "withdrew its participation." However, he offers no citations to support these conclusory assertions as required by Local Rule 7.1. *See* E.D. Pa. R. Civ. P. 7.1(c).

Nonetheless, Starbucks's assertion is merely an affirmative defense, which it was required to plead in its Answer. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); Fed. R. Civ. P. 8(c). Such defenses are not concessions of liability. *Cf. Sterten v. Option One Mortg. Corp.*, 479 F. Supp.2d 479, 482 (E.D. Pa. 2007), *aff'd sub nom. In re Sterten*, 546 F.3d 278 (3d Cir. 2008) ("An affirmative defense is an assertion raising new facts and arguments that, if proven, defeat the plaintiff's claim even if the allegations in her complaint are true." (citing 2 James William Moore et al., Moore's Federal Practice ¶ 8.07[1] (3d ed. 2006))).

[8] Mehdizadeh maintains that his Seventh Amendment right to a jury trial will be violated by granting Starbucks's Motion. But it is set in stone that the Seventh Amendment does not prevent a District Court from dismissing a complaint in a case where, as here, the plaintiff has failed to plead a plausible claim. *See, e.g.*, *Ex parte Peterson*, 253 U.S. 300, 310 (1920) ("No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined"); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979) ("The Seventh Amendment has never been interpreted in the rigid manner advocated by the petitioners. On the contrary, many procedural devices developed since 1791 that have diminished the civil jury's historic domain have been found not to be inconsistent with the Seventh Amendment." (citing *Galloway v. United States*, 319 U.S. 372, 388-93 (1943) (directed verdict does not violate the Seventh Amendment); *Fidelity & Deposit Co. v. United States*, 187 U.S. 315, 319-21 (summary judgment does not violate the Seventh Amendment))); *Acosta v. Democratic City Comm.*, 767 F. App'x 392, 394 (3d Cir. 2019) ("[T]he District Court did not violate [Plaintiff's] right to a jury trial under the Seventh Amendment by granting the motions to dismiss." (citing *Parklane Hosiery Co*, 439 U.S. at 336)).

BY THE COURT:

/s/Wendy Beetlestone, J.
_____
**WENDY BEETLESTONE, J.**